**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., | United States District Court |
| | Case No. |
| Plaintiff, | Hon. |
| v. | |
| JOHNSON ELECTRIC NORTH AMERICA, INC., | Case removed from: |
| | Wayne County Circuit Court |
| | Case No. 09-008558-CK |
| Defendant. | Honorable Amy P. Hathaway |

_____/

## NOTICE OF REMOVAL

Defendant Johnson Electric North America, Inc., a Connecticut corporation ("Defendant"), by its attorneys, Pepper Hamilton LLP, files this Notice of Removal of the above-captioned action from the Circuit Court for the County of Wayne, State of Michigan, based on the following grounds:

1.     On or about April 10, 2009, this action was commenced by Plaintiff Nissan North America, Inc. ("Nissan" or "Plaintiff"), against Defendant in the Circuit Court for the County of Wayne, and is currently pending in that court as Case No. 09-008558-CK.

2.     Defendant was served with a copy of the Summons and Complaint ("Complaint") on or about April 10, 2009.

3.     Plaintiff's Complaint (attached as Exhibit 1) constitutes the entire proceedings in the Wayne County Circuit Court.

4.     The above-captioned case is a civil action that may be removed to this Court under 28 U.S.C. §1441(a), because this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332.

5.     The parties in this action are completely diverse:

a.    According to the Complaint, Plaintiff, Nissan North America, Inc., is a California corporation with its principal place of business in Franklin, Tennessee;

b.    Defendant, Johnson Electric North America, Inc., is a Connecticut Corporation with its principal place of business in Shelton, Connecticut.

6.    The amount in controversy in this action exceeds Seventy-Five Thousand ($75,000.00) Dollars.  Plaintiff seeks damages upon allegations that Defendant breached contracts related to the ongoing supply of automotive parts.  Plaintiff also seeks damages upon breach of warranty allegations.  Defendant denies, however, that it is liable to Plaintiffs in any amount.

7.    The Circuit Court for the County of Wayne is located in the Eastern District of Michigan, Southern Division.

8.    This petition is timely filed under 28 U.S.C. §1446(b) as it is filed within thirty (30) days after receipt of the Complaint by Defendant.

WHEREFORE, Defendant respectfully requests that this action now pending in the Circuit Court for the County of Wayne, State of Michigan, be removed to this Court.

Respectfully submitted,


_____/s/   Matthew J. Lund_____
MATTHEW J. LUND (P48632)
ADAM A. WOLFE (P71278)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110

Attorneys for Defendant Johnson Electric
North America, Inc.

Dated:  May 8, 2009

#10936421 v1 (132383.5)

# EXHIBIT 1

STATE OF MICHIGAN
THIRD CIRCUIT COURT



**SUMMONS AND
RETURN OF SERVICE**

CASE NO.  09-008558-CK

COURT
ADDRESS: 2 WOODWARD AVENUE, DETROIT, MICHIGAN 48226

COURT
TELEPHONE NO. (313) 224-

THIS CASE ASSIGNED TO JUDGE:  Amy P Hathaway

Bar Number: 40786

| PLAINTIFF | DEFENDANT |
|---|---|
| NISSAN NORTH AMERICA INC | VS  JOHNSON ELECTRIC NORTH AMERICA INC |

PLAINTIFF'S ATTORNEY

Bishoff, Thomas S.
(P-53753)
400 Renaissance Ctr
Detroit, MI 48243-1502
(313) 568-5341

| CASE FILING FEE | JURY FEE |
|---|---|
| Paid | Paid |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 04/10/2009 | 07/10/2009 | Sterling Harrison |

*This summons is invalid unless served on or before its expiration date.    Cathy M. Garrett – Wayne County Clerk

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The docket number and assigned judge of the civil/domestic relations action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

The action ☐ remains ☐ is no longer  pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____                    _____
Date                                        Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangement.

FORM MCWC101
REV. (3-59)  MC 01 (10/97)   **SUMMONS AND RETURN OF SERVICE**   MCR 2.102(B)(11), MCR 2.104, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206 (A)
DEFENDANT

For best results use a felt pen

| RETURN OF SERVICE | | Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

| CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE |

☐ **OFFICER CERTIFICATE**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that:  (notary not required)

**OR**

☐ **AFFIDAVIT OF PROCESS SERVER**
Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:  (notary required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ After diligent search and inquiry, I have been unable to find and serve the following defendant(s):

_____

I have made the following efforts in attempting to serve the defendant(s): _____

_____

☐ I have personally attempted to serve the summons and complaint, together with _____
Attachment

_____ on _____
Name

at _____ and have been unable to complete service because
Address
the address was incorrect at the time of filing.

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                    Deputy court clerk/Notary public

| ACKNOWLEDGMENT OF SERVICE |

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .
Signature

JURY FEE PAID
THIS DATE:

BY: APR 1 0 2009

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

NISSAN NORTH AMERICA, INC,

    Plaintiff,

v.

JOHNSON ELECTRIC NORTH AMERICA,
INC., a foreign corporation,

    Defendant.

Civil Action No. 09-    CK
Hon.

Thomas S. Bishoff (P53753)
Brittany M. Schultz (P63272)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiff Nissan
400 Renaissance Center
Detroit, MI 48243
(313) 568-5341

## NISSAN NORTH AMERICA, INC.'S COMPLAINT AND JURY DEMAND

> There is no other civil action between these parties arising out of
> the same transaction or occurrence as alleged in this complaint
> pending in this court, nor has any such action been previously filed
> and dismissed after having been assigned to a judge. MCR
> 2.113(C)(2)(a).

Plaintiff Nissan North America, Inc. ("Nissan"), through its counsel, Dykema Gossett

PLLC, alleges as its Complaint against Defendant Johnson Electric North America, Inc.

("Johnson Electric") as follows:

### NATURE OF THE ACTION

1.    This civil action arises out of Johnson Electric's design, manufacture, and supply

of defective automotive components in breach of its contractual and other obligations resulting in

1

the recalls of certain model year 2004 – 2006 Nissan Titan, Nissan Armada, and Infiniti QX56 vehicles (the "Subject Vehicles").

2. Johnson Electric is a Tier 2 supplier to Nissan. As described in detail below, Johnson Electric supplied defective air conditioner condenser fan motors and fan assemblies to Visteon Corporation ("Visteon"), which is a Tier 1 supplier to Nissan of cooling fan assemblies.

3. Johnson Electric's defective components were utilized in and incorporated into the cooling fan assemblies that Visteon sold to Nissan which were, in turn, utilized in and incorporated into the Subject Vehicles.

4. Johnson Electric is liable to Nissan in damages as a result of Johnson Electric's design, manufacture and supply of defective components, including the costs and expenses associated with the recalls of the Subject Vehicles and warranty claims.

## PARTIES, JURISDICTION AND VENUE

5. Nissan is a corporation organized under the laws of the State of California with its principal place of business at One Nissan Way, Franklin, Tennessee 37067. At all times relevant hereto, Nissan was an original equipment manufacturer ("OEM") engaged in the business of manufacturing and distributing new motor vehicles under various brands, including Nissan Titan, Nissan Armada and Infiniti QX56 brands.

6. Johnson Electric is a corporation organized under the laws of the State of Connecticut with a business office located in Plymouth, Michigan. Its agent for service of process is CSC-Lawyers Incorporating Service Company, 601 Abbott Road, East Lansing, Michigan 48823. At all times relevant hereto, Johnson Electric was in the business of, among other things, designing, manufacturing, and supplying OEM air conditioner condenser fan assemblies to Nissan through Nissan's Tier 1 supplier, Visteon.

2

7. This Court has subject matter jurisdiction over this lawsuit because the amount in controversy exceeds $25,000, exclusive of interest, fees and costs.

8. This Court has personal jurisdiction over Johnson Electric pursuant to M.C.L. § 600.711 because (a) Johnson Electric conducts continuous and systematic business in the State of Michigan, (b) Johnson Electric has a registered agent in the State of Michigan, and (c) Johnson Electric has consented to jurisdiction in this Court.

9. Venue in this Court is proper pursuant to M.C.L. § 600.1621 because (a) Johnson Electric conducts business in Wayne County, Michigan, (b) Johnson Electric has conducted business with Nissan, through Visteon, in Wayne County, Michigan in connection with the issues set forth here, and (c) Johnson Electric has a business office located at 47660 Halyard, Plymouth, Wayne County, Michigan. In addition, the contract between Visteon and Johnson Electric, to which Nissan is an intended third-party beneficiary, provides in relevant part that all disputes "shall be adjudicated exclusively in the Circuit Court for the County of Wayne ... ."

## GENERAL ALLEGATIONS

10. Visteon is and has been a Tier 1 supplier to Nissan of certain components and assemblies, including certain cooling fan assemblies utilized in the Subject Vehicles (the "Subject Assemblies").

11. Visteon, either directly or through its affiliate and/or subsidiary VC Regional & MGF., LLC, entered into a subcontract with Tier 2 supplier Johnson Electric to purchase certain air conditioner condenser fan motors and fan assemblies utilized in and incorporated into the Subject Assemblies. The air conditioner condenser fan motors and fan assemblies designed, manufactured and supplied by Johnson Electric are referred to as the "90W Fan Motor Assemblies."

12. The supply chain is represented graphically as follows:

3



| Nissan (OEM) – Subject Vehicles |
| --- |

↑

| Visteon (Tier 1) – Subject Assemblies |
| --- |

↑

| Johnson Electric (Tier 2) – 90W Fan Motor Assemblies |
| --- |

## The Visteon/Johnson Electric Contracts

13.    Pursuant to the supply relationship between Visteon and Johnson Electric and as part of the process of designing, manufacturing and supplying the 90W Fan Motor Assemblies, Visteon issued and Johnson Electric accepted without objection certain purchase orders (the "Visteon Purchase Orders"). A copy of the Visteon Purchase Orders are in the possession of Johnson Electric and, therefore, are not attached here.

14.    The Visteon Purchase Orders incorporate Visteon's Global Terms for Production Parts and Non-Production Goods and Services (the "Visteon Terms & Conditions"). A copy of the Visteon Terms & Conditions are in the possession of Johnson Electric and, therefore, are not attached here.

15.    The contracts between Visteon and Johnson Electric consist of the Visteon Purchase Orders and Visteon Terms & Conditions and are collectively referred to as the "Visteon Contracts."

16.    Nissan is and was intended to be a third-party beneficiary of the Visteon Contracts between Visteon and Johnson Electric relating to the 90W Fan Motor Assemblies. The 90W Fan Motor Assemblies purchased by Visteon from Johnson Electric were utilized and incorporated into the Subject Assemblies which, in turn, were utilized in and incorporated into the Subject Vehicles.

4

17.     Nissan's status as an intended third-party beneficiary to the Visteon Contracts is clear from Visteon's Terms & Conditions which obligate Johnson Electric, as seller, to comply with Nissan's terms and conditions and any agreement or purchase orders issued by Nissan to Visteon:

> CUSTOMER REQUIREMENTS. Seller agrees to comply with the applicable terms and conditions of any agreements ("Customer Purchase Orders") received by Buyer from a third party ("Customer"), in which Buyer agrees to supply to Customer [Nissan], or incorporate into goods supplied to Customer, Supplies purchased by Buyer from Seller. Buyer may supply Seller with information regarding the Customer Purchase Orders, but Seller shall be responsible for ascertaining any terms and conditions contained in Customer Purchase Orders that may affect Seller's obligations under a Purchase Order … .

18.     Visteon's Terms & Conditions make additional and numerous references to the obligations and duties owed by Johnson Electric directly to Nissan, often described as "Buyer's customer."

19.     Visteon's Terms & Conditions address a multitude of issues regarding Johnson Electric's design, manufacture and supply of the 90W Fan Motor Assemblies. For example, pursuant to Section 2 of Visteon's Terms & Conditions entitled "MODIFICATIONS," Johnson Electric agreed not to make "any change in the design, processing, packing, marking, shipping or date or place of delivery" of the subject parts "unless done pursuant to [Visteon's] instructions or with [Visteon's] written approval."

20.     Johnson Electric also agreed that the 90W Fan Motor Assemblies would conform to certain quality standards, including standards established by Visteon and Nissan. Section 3 of Visteon's Terms & Conditions provides in relevant part:

> SUPPLIER QUALITY AND DEVELOPMENT; SAMPLES; PPAP; PARTS IDENTIFICATION. (a) Seller will conform to the quality control standards and inspection system, as well as related standards and systems (including without limitation, quality control policies, TS 16949, QS 9000 and IS 9000), that are established by Buyer and Buyer's customers.

5

(b) Seller will also participate in supplier quality and development programs of Buyer and Buyer's customers that apply to the Supplies described in a Purchase Order, including meeting specified quality and delivery rating criteria.

(c) Seller agrees to meet the full requirements of industry Production Part Approval Processes (PPAP) as specified by Buyer and Buyer's customers and agrees to present this information to Buyer upon request, at the level request, unless otherwise specifically agreed by Buyer in writing.

* * *

21.    Johnson Electric also made express warranties regarding the supply of 90W Fan

Motor Assemblies. Section 12 of Visteon's Terms & Conditions provides in relevant part:

WARRANTY. (a) Seller expressly warrants and guarantees to Buyer, Buyer's successor, assigns and customers, and the users of Buyer's products, that all Supplies delivered to Buyer will, during the Warranty Period set forth below (i) conform to the specifications, standards, drawings, instructions, advertisements, statements on containers or labels, descriptions and samples; (ii) be free from defects in workmanship and materials and shall be new and of the highest quality…(iv) be merchantable, safe and fit for the Buyer's intended purchases, which purposes have been communicated to the Seller … All services performed by Seller shall be performed in a competent, workmanlike manner and in accordance with industry standards. These warranties shall survive inspection, test, delivery, acceptance, use and payment by Buyer and shall inure to the benefit of Buyer, its successors, assigns, customers and the users of Buyer's products. These warranties may not be limited or disclaimed by Seller … .

(b) Seller will indemnify and hold Buyer harmless in respect of the cost of recall campaigns and other corrective service actions that, in Buyer's reasonable judgment, are required to rectify non-conformities in the Supplies that are the result of a breach of the foregoing warranty, whether such recall campaigns are mandated by any governmental entity or by the Buyer.

(c) "Warranty Period" shall mean the longer of the following time periods (i) 18 months from the day of first use of the Supplies by Buyer or acceptance by Buyer, whichever occurs later; or (ii) if the Supplies are utilized in new vehicles, the Warranty Period will continue for the same period as the new vehicle warranty period offered to retail purchasers in the country in which the vehicle is sold … . Notwithstanding the foregoing, Seller agrees to waive the expiration of the Warranty Period in the event there are failures or defects discovered after the Warranty Period of a significant nature or in a significant portion of the goods, or a defect is discovered which, in Buyer's opinion, constitutes a threat of damage to property or to the health and safety of any person.

* * *

6

22.     Johnson Electric also agreed to indemnify, hold harmless and defend Visteon and

Nissan from any and all losses, costs, expenses, attorney's fees and any other cost of litigation

arising out of its performance or obligations under the Visteon Contracts, including claims

arising out of product recall claims and warranty claims. Section 13 of Visteon's Terms &

Conditions provides in relevant part:

DEFENSE, INDEMNIFY AND INSURANCE. (a) To the fullest extent
permitted by law, Seller agrees to indemnify, hold harmless and defend Buyer and
its affiliated companies, their directors, officers, employees, agents and customers
("Indemnitees") from and against any loss, liabilities, costs, expenses, suits,
actions, claims and all other obligations and proceedings, including without
limitation all judgments rendered against, and all fines and penalties imposed
upon, Indemnitees and all attorney's fees and any other cost of litigation
("Liabilities") that are in any way related to Seller's performance or obligations
under a Purchase Order, including claims arising out of a breach hereof, warranty
claims, product recall claims, product liability claims, injuries to persons,
including death, or damage to property caused by Seller, its employees, agents,
subcontractors, or in any way attributable to the performance of Seller, including
without limitation, breach of contract, breach of warranty or product liability.
Seller's obligation to defend and indemnify under this Section will apply
regardless of whether the claim arises in tort, negligence, contract, warranty, strict
liability or otherwise except for claims that arise as a result of the sole negligence
of Buyer. Seller agrees to indemnify, save harmless and defend Indemnitees from
and against all Liabilities arising out of actual or alleged infringement, including
infringement of any patent, trademark or copyright relative to the goods.

*  *  *

23.     Johnson Electric also agreed to be responsible for all costs, expenses, and losses

incurred by Visteon and Nissan caused by Johnson Electric's defective and non-conforming

goods, including recall campaigns or other corrective service action. Section 23 of Visteon's

Terms & Conditions provides:

REMEDIES, WAIVER. Buyer's rights and remedies shall be cumulative and in
addition to any other rights or remedies provided by law or equity ... . At
Buyer's request, Seller will reimburse Buyer for all incidental, consequential and
special damages caused by nonconforming supplies, including but not limited to,
costs, expenses, and losses incurred directly or indirectly by Buyer or its
customers (i) in inspecting, sorting, repairing or replacing the nonconforming
supplies; (ii) resulting from production interruption; (iii) conducting recall

7

campaigns or other corrective service actions; or (iv) resulting from personal injury (including death) or property damage caused by the nonconforming Supplies. Consequential damages include professional fees incurred by Buyer. In any action brought by Buyer to enforce Seller's obligation to produce and deliver Supplies under a Purchase Order, the parties agree that the Buyer, at its option and in addition to any other remedies available, is entitled to specific performance of Seller's obligations under a Purchase Order. Buyer shall not, under any circumstances, be liable to Seller for incidental, consequential or special damages.

24.     Pursuant to Section 27 of Visteon's Terms & Conditions, to the extent a dispute

arises under the Visteon Contracts, Johnson Electric agreed to adjudicate the dispute in this

Court (or the Eastern District of Michigan) and that the contract would be subject to Michigan

law:

All disputes between the parties, including those arising, directly or indirectly, under this Purchase Order or the performance or breach of this Purchase Order, shall be adjudicated exclusively in the Circuit Court for the County of Wayne, State of Michigan or, if subject matter jurisdiction exists, the U.S. District Court for the Eastern District of Michigan. The parties stipulate that the referenced venues are convenient. All disputes between the parties and this Purchase Order will be construed, governed and controlled in all respects by the laws of the State of Michigan. The UN Convention for the International Sale of Goods is expressly excluded.

* * *

25.     As set forth in detail below, Johnson Electric breached its obligations to Nissan and Visteon as contained in the Visteon Contracts by, among other things, supplying defective and non-conforming 90W Fan Motor Assemblies, making unauthorized design and other changes to the 90W Fan Motor Assemblies, failing to test adequately the 90W Fan Motor Assemblies, and failing to reimburse Nissan for the costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs and expenses incurred by Nissan.

8

## The Nissan/Visteon Contracts to Which
## Johnson Electric Agreed to be Bound

26. As set forth above, as part of the Visteon/Johnson Electric Contracts, Johnson Electric agreed to comply with and be bound by the terms and conditions of any agreements between Visteon and Nissan regarding the Subject Assemblies and the 90W Fan Motor Assemblies.

27. Pursuant to the supply relationship between Nissan and Visteon and as part of the process of designing, manufacturing and supplying the Subject Assemblies, Nissan issued and Visteon accepted without objection certain purchase orders, including a Master Purchase Agreement (the "Nissan Purchase Orders"). A copy of the Nissan Purchase Orders are in the possession of Johnson Electric and, therefore, are not attached here.

28. The Nissan Purchase Orders incorporate Nissan's terms and conditions ("Nissan Terms & Conditions"). A copy of Nissan's Terms & Conditions are in the possession of Johnson Electric and, therefore, are not attached here.

29. The contracts between Nissan and Visteon consist of the Nissan Purchase Orders and Nissan Terms & Conditions and are collectively referred to as the "Nissan Contracts."

30. Johnson Electric is bound by the terms and conditions set forth in the Nissan Contracts.

31. Similar to the Visteon Contracts, the Nissan Contracts address a multitude of issues regarding Johnson Electric's design, manufacture and supply of the 90W Fan Motor Assemblies. For example, pursuant to Article 3 of the Nissan Purchase Orders, Johnson Electric was obligated to manufacture the 90W Fan Motor Assemblies in accordance with drawings and specifications designated or approved by Nissan.

9

32. The Nissan Contracts also strictly prohibit Johnson Electric from making any changes to the components unless approved in writing by Nissan. Specifically, Article 8 of Nissan's Purchase Orders provides in relevant part: "Supplier shall not make any changes in the design or composition of any Parts without Nissan's prior written agreement." Section 22 of Nissan's Terms & Conditions allows Nissan to make design and other changes, but does not extend the same rights to suppliers such as Johnson Electric:

Changes. Nissan reserves the right at any time to make changes in any one or more of the following: (a) quantity; (b) specifications, drawings and data; (c) methods of packaging or shipment. No such changes shall be valid or binding upon Nissan unless incorporated in a change order or additional order signed by an authorized representative of Nissan.

33. The Nissan Contracts also obligate Johnson Electric to meet certain quality standards. Article 10 of Nissan's Purchase Orders provides:

Supplier shall manufacture the Parts in accordance with all of Nissan's quality procedures for its suppliers. In addition, Supplier shall continuously monitor the Parts and promptly report to Nissan any Parts that do not comply with the applicable Specifications and the warranties required of Supplier in Article 9, and shall promptly notify Nissan of any defects or deficiences in design (including if Supplier has reason to believe that any Specifications are not adequate to produce Parts that will function throughout the greater of the expected life of the Parts or the applicable warranty period, manufacture, or in-use performance.

34. Pursuant to the Nissan Contracts, Johnson Electric expressly warranted the 90W Fan Motor Assemblies that it designed, manufactured and supplied would be, among other things, free from defects, merchantable, and fit for the particular purpose intended. Article 9 of the Nissan Purchase Orders provides in relevant part:

Warranties. 9.1. Supplier warrants that it has good and merchantable title to the Parts and that the Parts shall: (1) be free from defects in design (to the extent that Supplier has furnished the design), materials, workmanship and performance; (2) be of merchantable quality and fit for the particular purpose for which the Parts are sold; (3) comply with all Nissan Drawings, Acceptance Drawings and other Specifications designated or approved by Nissan pursuant to Article 3.1(3); (4) be free and clear of all liens and encumbrances; (5) comply with all Applicable Laws; and (6) comply with all other warranties implied or provided for by law.

10

> **9.2.** All warranties shall extend to Nissan for at least the time and mileage limitations of relevant customer warranties. Supplier shall reimburse Nissan for all costs (including, without limitation, labor charges, cost of replacement parts, towing, dealer handling charges and other expenses) incurred by Nissan as a result of Supplier's breach of any warranty.

* * *

35.     Similar express warranties are set forth in Nissan's Terms & Conditions at

Section 7.

36.     The Nissan Contracts also obligate Johnson Electric to reimburse Nissan for all

costs and expenses incurred by Nissan for any recalls due to defective or non-conforming parts.

This is stated at several points in the Nissan Contracts, including Article 11 of Nissan's Purchase

Orders and Section 8 of Nissan's Terms & Conditions, which respectively provide:

> **Article 11. Recall and Reimbursement.** Supplier shall reimburse Nissan, to the extent attributable to Supplier, for all costs incurred by Nissan (including, without limitation, costs for notification, replacement parts, labor, penalties, fines and buy backs) as a result of any recall, service campaign or similar program initiated by Nissan, or required for compliance with any Applicable Law. All decisions regarding recalls, service campaigns, and similar programs shall by made by Nissan, at its sole discretion.

* * *

> **Section 8. Sellers Liability.** In addition to what is specified elsewhere on the document, Seller's liability shall also include all costs incurred as a result of vehicle recall programs pursuant to NTMSVSA, damage or cost due to problems developed in other parts resulting from defective parts supplied by Seller, and damages or cost arising from claims of personal injury or property damages caused directly or indirectly by defective parts supplied by Seller. Nissan shall have available to it all other remedies implied or provided for by law.

37.     Pursuant to Article 12 of Nissan's Purchase Orders, Johnson Electric also agreed

to indemnify, hold harmless and defend Nissan from any and all losses, costs, expenses,

attorney's fees and any other cost of litigation arising out of its performance or obligations under

the Visteon Contracts, including claims arising out of product recall claims and warranty claims.

11

38.     Similar to the Visteon Contracts, under Article 30 of the Nissan Purchase Orders and Section 16 of the Nissan Terms & Conditions, Nissan's remedies are cumulative and additional to any other or further remedies implied or available at law, including implied rights and remedies under the Uniform Commercial Code.

39.     Unlike the Visteon Contracts, the Nissan Contracts are governed by Tennessee law.

40.     As set forth in detail below, Johnson Electric breached its obligations to Nissan as contained in the Nissan Contracts by, among other things, supplying defective and non-conforming 90W Fan Motor Assemblies, making unauthorized design and other changes to the 90W Fan Motor Assemblies, failing to test adequately the 90W Fan Motor Assemblies, and failing to reimburse Nissan for the costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs and expenses incurred by Nissan.

### The Defective and Non-Conforming 90W Fan Motor Assemblies

41.     Upon information and belief, without any notice to or the approval of Nissan or Visteon, Johnson Electric made several design and other changes to the 90W Fan Motor Assemblies, including, among others, implementing a new brush card design in the 90W Fan Motor Assemblies by changing the connection from a soldered to a crimped design and changing the location of the brush card inductors.

42.     In addition, the 90W Fan Motor Assemblies designed, manufactured and supplied by Johnson Electric did not meet the required Nissan specifications, including, among others, Nissan's requirements for "Water Resistance" or "Drainability."

43.     Johnson Electric also did not properly conduct testing, including, among others, NDS "Locking Performance" testing of the 90W Fan Motor Assemblies.

12

44.    As a result of Johnson Electric's actions and inactions, as set forth herein, the 90W Fan Motor Assemblies allowed for water intrusion and inadequate drainage of moisture. If moisture accumulates in the fan motor, then it could result in corrosion, which could lead to increased temperature in the fan motor. Because of the motor's structure, the increased temperature could melt wiring insulation and other plastic components and ultimately result in a thermal event thereby compromising the safety, reliability, durability, quality and performance of the Subject Vehicles.

45.    As a result of Johnson Electric's actions and inactions, as set forth herein, Nissan was forced to initiate safety recalls of the Subject Vehicles.

46.    Specifically, in 2008 Nissan initiated recall campaigns PB076, PB077, PB080, and PB081 of the Subject Vehicles. The recalls involved, among other things, the inspection and, as needed, installation of a thermal protector kit on the air conditioning condenser fans, and, as needed, the replacement of fan motors, all at significant cost and expense to Nissan.

47.    In addition, Nissan has also been forced to incur significant costs and expenses to extend warranties on the Subject Vehicles, resolve warranty claims and/or litigation on behalf of its customers.

## Johnson Electric Has Failed To Accept Responsibility for the Defective 90W Fan Motor Assemblies

48.    Despite its clear contractual and other obligations to Nissan, Johnson Electric has failed to accept responsibility for the recalls of the Subject Vehicles and has refused to reimburse Nissan for the costs and expenses it incurred arising out of the recalls, as well as other damages.

49.    Nissan has incurred millions of dollars in recall costs and expenses and other damages as a result of the defective and non-conforming 90W Fan Motor Assemblies supplied

13

by Johnson Electric. Nissan anticipates that it will incur additional costs, expenses and damages as additional vehicles from the subject vehicle populations are recalled and/or serviced.

## COUNT I
### (Breach of Contract under the Visteon Contracts)

50.     The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

51.     Visteon and Johnson Electric entered into the Visteon Contracts which are valid, binding and supported by consideration.

52.     Nissan is an intended third-party beneficiary to the Visteon Contracts.

53.     Upon information and belief, Visteon has complied with all of its obligations to Johnson Electric under the Visteon Contracts.

54.     Johnson Electric breached the Visteon Contracts by, among other things:

(a)     supplying defective and non-conforming 90W Fan Motor Assemblies;

(b)     making unauthorized design and other changes and modifications to the 90W Fan Motor Assemblies;

(c)     failing to meet quality control standards;

(d)     failing to meet the requirements of industry Production Part Approval Processes;

(e)     failing to test adequately the 90W Fan Motor Assemblies;

(f)     failing to indemnify, hold harmless and defend Nissan from any and all losses, liabilities, costs, expenses, suits, actions, claims, including costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs, expenses and damages incurred by Nissan; and

14

(g)     failing to reimburse Nissan for the costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs, expenses and damages incurred by Nissan.

55.     All conditions precedent to Nissan's enforcement of the subject contracts have occurred or have been met.

56.     Johnson Electric has actual notice of the defects and non-conformities and its breaches of the Visteon Contracts.

57.     As a result of Johnson Electric's breaches of the Visteon Contracts, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

58.     As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT II
### (Breach of Express Warranty under the Visteon Contracts)

59.     The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

60.     Johnson Electric designed, manufactured and supplied the 90W Fan Motor Assemblies to Visteon and Nissan pursuant to the Visteon Contracts and expressly warranted, among other things, that the parts would: (a) conform to the applicable specifications, drawings, descriptions, etc.; (b) be free from defects in workmanship and material; (c) be new and of the highest quality; and (d) be merchantable, safe and fit for their intended purposes.

61.     Johnson Electric further agreed that these express warranties are in addition to any additional warranties implied by law.

62.     Nissan is an intended third-party beneficiary to the Visteon Contracts.

15

63. Johnson Electric breached its express warranties by, among other things, supplying Nissan with defective and non-conforming 90W Fan Motor Assemblies.

64. All conditions precedent to Nissan's enforcement of the subject contracts have occurred or have been met.

65. Johnson Electric has actual notice of the defects and non-conformities and its breaches of the express warranties.

66. As a result of Johnson Electric's breaches of the express warranties, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

67. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT III
### (Breach of Implied Warranty of Merchantability under the Visteon Contracts)

68. The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

69. Pursuant to Uniform Commercial Code 2-314, Johnson Electric's sales of the 90W Fan Motor Assemblies were accompanied by an implied warranty of merchantability. *See* M.C.L. § 440.2314. Johnson Electric's implied warranty of merchantability was in addition to its express warranties under the Visteon Contracts

70. Nissan in an intended third-party beneficiary to the Visteon Contracts.

71. Pursuant to the implied warranty of merchantability, Johnson Electric warranted that the 90W Fan Motor Assemblies were merchantable and fit for the ordinary purposes for which they are used, which purposes were known to Johnson Electric.

16

72. Johnson Electric breached its implied warranty of merchantability by, among other things, designing, manufacturing and supplying defective and non-conforming 90W Fan Motor Assemblies.

73. Johnson Electric has actual notice of the defects and non-conformities and its breach of implied warranty.

74. As a result of Johnson Electric's breach of implied warranty, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

75. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT IV
### (Breach of Implied Warranty of Fitness under the Visteon Contracts)

76. The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

77. Pursuant to Uniform Commercial Code 2-315, Johnson Electric's sales of the 90W Fan Motor Assemblies were accompanied by an implied warranty of fitness for the particular purposes for the parts. *See* M.C.L. § 440.2315. Johnson Electric's implied warranty of fitness was in addition to its express warranties under the Visteon Contracts.

78. Nissan is an intended third-party beneficiary to the Visteon Contracts.

79. Pursuant to the implied warranty of fitness, Johnson Electric warranted that the 90W Fan Motor Assemblies were fit and sufficient for their intended and particular purposes. Johnson Electric was aware of the intended and particular purposes for the 90W Fan Motor Assemblies, including their utilization in and incorporation into the Subject Assemblies and the Subject Vehicles, and Nissan and Visteon relied upon Johnson Electric's skill or judgment to select or furnish suitable goods.

17

80.     Johnson Electric breached its implied warranty of fitness by, among other things, designing, manufacturing and supplying defective and non-conforming 90W Fan Motor Assemblies.

81.     Johnson Electric has actual notice of the defects and non-conformities and its breach of implied warranty.

82.     As a result of Johnson Electric's breach of implied warranty, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

83.     As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT V
### (Breach of Contract under the Nissan Contracts)

84.     The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

85.     Visteon and Johnson Electric entered into the Visteon Contracts which are valid, binding and supported by consideration.

86.     Nissan is an intended third-party beneficiary to the Visteon Contracts.

87.     As set forth above, Nissan's status as an intended third-party beneficiary to the Visteon Contracts is clear from Visteon's Terms & Conditions which obligate Johnson Electric, as seller, to comply with Nissan's terms and conditions and any agreement or purchase orders issued by Nissan to Visteon. As such, Johnson Electric is bound to and obligated to comply with the Nissan Contracts.

88.     Upon information and belief, Visteon has complied with all of its obligations to Johnson Electric under the Visteon Contracts.

18

89.     Johnson Electric breached the Visteon Contracts and Nissan Contracts by, among other things:

    (a)     supplying defective and non-conforming 90W Fan Motor Assemblies;

    (b)     making unauthorized design and other changes and modifications to the 90W Fan Motor Assemblies;

    (c)     failing to meet quality control standards;

    (d)     failing to meet the requirements of industry Production Part Approval Processes;

    (e)     failing to meet Nissan drawings and other specifications;

    (f)     failing to test adequately the 90W Fan Motor Assemblies;

    (g)     failing to indemnify, hold harmless and defend Nissan from any and all losses, liabilities, costs, expenses, suits, actions, claims, including costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs, expenses and damages incurred by Nissan; and

    (h)     failing to reimburse Nissan for the costs and expenses associated with the recalls of the Subject Vehicles, warranty claims, and other costs, expenses and damages incurred by Nissan.

90.     All conditions precedent to Nissan's enforcement of the subject contracts have occurred or have been met.

91.     Johnson Electric has actual notice of the defects and non-conformities and its breaches of the Visteon Contracts and the Nissan Contracts.

92.     As a result of Johnson Electric's breaches of the Visteon Contracts and the Nissan Contracts, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

19

93. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT VI
### (Breach of Express Warranty under the Nissan Contracts)

94. The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

95. Johnson Electric designed, manufactured and supplied the 90W Fan Motor Assemblies to Visteon and Nissan pursuant to the Visteon Contracts and the Nissan Contracts and expressly warranted, among other things, that the parts would: (a) conform to the applicable specifications, drawings, descriptions, etc.; (b) be free from defects in workmanship and material; (c) be new and of the highest quality; and (d) be merchantable, safe and fit for their intended purposes.

96. Johnson Electric further agreed that these express warranties are in addition to any additional warranties implied by law.

97. Nissan is an intended third-party beneficiary to the Visteon Contracts, and Johnson Electric is bound to and obligated to comply with the Nissan Contracts.

98. Johnson Electric breached its express warranties by, among other things, supplying Nissan with defective and non-conforming 90W Fan Motor Assemblies.

99. All conditions precedent to Nissan's enforcement of the subject contracts have occurred or have been met.

100. Johnson Electric has actual notice of the defects and non-conformities and its breaches of the express warranties.

101. As a result of Johnson Electric's breaches of the express warranties, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

20

102. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## COUNT VII
### (Breach of Implied Warranty of Merchantability under the Nissan Contracts)

103. The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

104. Pursuant to Uniform Commercial Code 2-314, Johnson Electric's sales of the 90W Fan Motor Assemblies were accompanied by an implied warranty of merchantability. *See* T.C.A. § 47-2-314. Johnson Electric's implied warranty of merchantability was in addition to its express warranties under the Visteon Contracts and the Nissan Contracts.

105. Nissan is an intended third-party beneficiary to the Visteon Contracts, and Johnson Electric is bound to and obligated to comply with the Nissan Contracts.

106. Pursuant to the implied warranty of merchantability, Johnson Electric warranted that the 90W Fan Motor Assemblies were merchantable and fit for the ordinary purposes for which they are used, which purposes were known to Johnson Electric.

107. Johnson Electric breached its implied warranty of merchantability by, among other things, designing, manufacturing and supplying defective and non-conforming 90W Fan Motor Assemblies.

108. Johnson Electric has actual notice of the defects and non-conformities and its breach of implied warranty.

109. As a result of Johnson Electric's breach of implied warranty, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

110. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

21

## COUNT VIII
### (Breach of Implied Warranty of Fitness under the Nissan Contracts)

111. The preceding paragraphs are hereby repeated and re-alleged as if set forth fully herein.

112. Pursuant to Uniform Commercial Code 2-315, Johnson Electric's sales of the 90W Fan Motor Assemblies were accompanied by an implied warranty of fitness for the particular purposes for the parts. *See* T.C.A. § 47-2-315. Johnson Electric's implied warranty of fitness was in addition to its express warranties under the Visteon Contracts and Nissan Contracts.

113. Nissan is an intended third-party beneficiary to the Visteon Contracts, and Johnson Electric is bound to and obligated to comply with the Nissan Contracts.

114. Pursuant to the implied warranty of fitness, Johnson Electric warranted that the 90W Fan Motor Assemblies were fit and sufficient for their intended and particular purposes. Johnson Electric was aware of the intended and particular purposes for the 90W Fan Motor Assemblies, including their utilization in and incorporation into the Subject Assemblies and the Subject Vehicles, and Nissan and Visteon relied upon Johnson Electric's skill or judgment to select or furnish suitable goods.

115. Johnson Electric breached its implied warranty of fitness by, among other things, designing, manufacturing and supplying defective and non-conforming 90W Fan Motor Assemblies.

116. Johnson Electric has actual notice of the defects and non-conformities and its breach of implied warranty.

22

117. As a result of Johnson Electric's breach of implied warranty, Nissan has incurred significant costs, expenses and damages, including costs and expenses arising out of the recalls of the Subject Vehicles, warranty claims, and other damages.

118. As a result of its breaches, Johnson Electric is liable to Nissan for its damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Nissan respectfully requests that the Court award the following relief:

(A) Enter judgment in favor of Nissan and award Nissan all of its damages;

(B) Award Nissan its litigation costs and expenses, interest, and attorneys fees; and

(C) Grant such other relief that this Court deems equitable, just, and appropriate.

## JURY DEMAND

Plaintiff Nissan hereby demands a jury trial as to all issues upon which it is entitled to a

jury trial.

DYKEMA GOSSETT PLLC

Thomas S. Bishoff (P53753)
Brittany M. Schultz (P63272)
Attorneys for Plaintiff Nissan
400 Renaissance Center
Detroit, MI 48243
(313) 568-5341

Dated: April 10, 2009

24

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

NISSAN NORTH AMERICA, INC.,

      Plaintiff,

    v.

JOHNSON ELECTRIC NORTH AMERICA,
INC.,

      Defendant.

_____/

Case No.  09-008558-CK

HONORABLE AMY P. HATHAWAY

| | |
|---|---|
| THOMAS S. BISHOFF (P53753) | MATTHEW J. LUND (P48632) |
| BRITTANY M. SCHULTZ (P63272) | ADAM A. WOLFE (P71278) |
| Dykema Gossett PLLC | Pepper Hamilton LLP |
| 400 Renaissance Center | 100 Renaissance Center, 36th Floor |
| Detroit, MI  48243 | Detroit, MI  48243 |
| (313) 568-5341 | (313) 259-7110 |
| | |
| Attorneys for Plaintiff | Attorneys for Defendant |

**NOTICE OF FILING NOTICE OF REMOVAL**

TO:   CLERK OF THE COURT

                   THOMAS S. BISHOFF (P53753)
                   BRITTANY M. SCHULTZ (P63272)
                   Dykema Gossett PLLC
                   400 Renaissance Center
                   Detroit, MI  48243
                   (313) 568-5341
                   Attorneys for Plaintiff

**PLEASE TAKE NOTICE** that on the 8th day of May, 2009, a copy of the Notice of
Removal attached hereto was filed with the Clerk of the United States District Court, Eastern District of
Michigan, Southern Division.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., | United States District Court |
| | Case No. |
| Plaintiff, | Hon. |
| v. | |
| JOHNSON ELECTRIC NORTH AMERICA, INC., | Case removed from: |
| | Wayne County Circuit Court |
| | Case No. 09-008558-CK |
| Defendant. | Honorable Amy P. Hathaway |

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, 2009, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, and a copy of the above Notice of Removal and this Certificate of Service was hand delivered upon:

THOMAS S. BISHOFF (P53753)
BRITTANY M. SCHULTZ (P63272)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
Attorneys for Plaintiff

_____ s/ Adam A. Wolfe _____
Matthew J. Lund (P48632)
Adam A. Wolfe (P71278)
Email: *wolfea@pepperlaw.com*
PEPPER HAMILTON LLP
100 Renaissance Center, Suite 3600
Detroit, MI 48243-1157
Telephone: 313.259.7110
*Attorneys for Defendant*