IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NISSAN NORTH AMERICA, INC,

       Plaintiff,                       Case No. 2:09-cv-11783-ADT-MKM

v.                                   Hon. Anna Diggs Taylor

JOHNSON ELECTRIC NORTH AMERICA,    Hon. Mag. Judge Mona K. Mazjoub
INC., a foreign corporation,

       Defendant.

_____

Thomas S. Bishoff (P53753)          Stephen Norman Weiss (SW3662)
Lisa A. Brown (P67208)              Gregory J. Fleesler (GF2165)
Brittany M. Schultz (P63272)         Moses & Singer, LLP
Dykema Gossett PLLC               The Chrysler Building
400 Renaissance Center            405 Lexington Avenue
Detroit, MI  48243                 New York, NY  10174
(313) 568-5341                     (212) 554-7800

*Attorneys for Plaintiff Nissan North America,*
*Inc.*                                Matthew J. Lund (P48632)
                                   Adam A. Wolfe (P71278)
                                   Pepper Hamilton LLP
                                   100 Renaissance Center, 36th Floor
                                   Detroit, MI  48243
                                   (313) 259-7110

                                   Thomas J. Manganello (P32255)
                                   Homayune A. Ghaussi (P63028)
                                   Warner Norcross & Judd LLP
                                   2000 Town Center, Suite 2700
                                   Southfield, MI  48075
                                   (248) 784-5000

                                   *Attorneys for Defendant Johnson Electric*
                                   *North America, Inc.*

_____

**<u>PLAINTIFF NISSAN NORTH AMERICA, INC.'S RESPONSE TO DEFENDANT
JOHNSON ELECTRIC'S THIRD MOTION TO COMPEL AND FOR SANCTIONS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

ISSUES PRESENTED ......................................................................................... v

CONTROLLING AUTHORITY .......................................................................... vii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

STATEMENT OF FACTS .................................................................................... 2

     A.    Background, The Recent Mediation, And Status Of Litigation .............................. 2

     B.    The Discovery Requests At Issue. ........................................................... 2

          1.    JENA's Document Request No. 48. ........................................................ 3

          2.    JENA's Interrogatory No. 7. ............................................................... 4

          3.    JENA's Rule 30(b)(6) Deposition Notice. .................................................. 5

ARGUMENT ..................................................................................................... 6

     I.    DISCOVERY MUST BE REASONABLY TAILORED AND NOT OVERLY BROAD AND UNDULY BURDENSOME AND DISCOVERY FISHING EXPEDITIONS ARE NOT ALLOWED IN THIS COURT. .................................. 6

     II.    NISSAN'S OBJECTIONS TO DOCUMENT REQUEST NO. 48 AND INTERROGATORY NO. 7 ARE PROPER AND SUBSTANTIALLY JUSTIFIED, AND ITS PRODUCTION OF ADDITIONAL DISCOVERY MATERIALS REGARDING A SIMILAR VEHICLE PLATFORM SHOULD RESOLVE ANY LEGITIMATE DISCOVERY NEEDS RAISED BY JENA. ..... 7

     III.    NISSAN'S OBJECTIONS TO CERTAIN TOPICS IN JENA'S DEPOSITION NOTICE ARE PROPER AND SUBSTANTIALLY JUSTIFIED. ...................... 10

          A.    Model Years Outside The Scope Of The Subject Vehicles And Other Issues, Topics Nos. 1, 2, 5, 8, 10, 11, and 12 .............................................. 11

          B.    Additional Objections To Topics Nos. 5, 8, 10, 11 and 12 ...................... 13

               1.    Additional Objections To Topic No. 5. ......................................... 13

               2.    Additional Objections To Topic No. 8. ......................................... 14

               3.    Additional Objections To Topic No. 10. ....................................... 14

               4.    Additional Objections To Topic No. 11. ....................................... 15

i

        5.        Additional Objections To Topic No. 12. ........................................15

    C.        Topic No. 3. .............................................................................................16

    D.        Topic No. 4(d) and (e). ............................................................................16

    E.        Topic No. 14. ...........................................................................................17

    F.        Topic No. 17. ...........................................................................................18

    G.        Topic No. 19. ...........................................................................................20

CONCLUSION...............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*Cramer v. Kuhns,*
192 A.D.2d 893 (3rd Dept. 1993) ...............................................................................9

*Ex parte Cooper Tire & Rubber Co.,*
987 So.2d 1090 (Ala. 2007) .......................................................................................9

*Gibson v. Ford Motor Co.,*
510 F.Supp.2d 1116 (N.D. Ga. 2007) .......................................................................19

*Giordano v. A&M Tool & Dye Company,*
104 A.D.2d 1027 (2nd Dept. 1984) .............................................................................9

*Higgs v. Doug Andrus Dist., LLC,*
2009 WL 1448268 (E.D. Mich. May 22, 2009) .........................................................8

*In re Alford Chevrolet-Geo,*
997 S.W.2d 173 (Tex. 1999) .......................................................................................9

*Isaac v. Shell Oil Co.,*
83 F.R.D. 428 (E.D. Mich. 1979) .........................................................................7, 12

*Johnson v. Greyhound Lines, Inc.,*
474 F.3d 288 (6th Cir. 2007) ......................................................................................6

*Latusso v. Black & Decker,*
198 A.D.2d 844 (4th Dept. 1993) ...............................................................................9

*Mestman v. Ariens Company,*
135 A.D.2d 516 (2nd Dept. 1997) ..............................................................................9

*Newfrey LLC v. Burnex Corp.,*
2009 WL 3698548 (E.D. Mich. Nov. 5, 2009) ...................................................11, 20

*Nissan Motors Corp. v. Espinosa,*
716 So.2d 279 (Fla. App. 1998) .................................................................................9

*Reed v. Nellcour Puritan Benett,*
193 F.R.D. 689 (D.Kan. 2000) ...........................................................................11, 20

*Rogers v. City Of Detroit,*
2009 WL 1427381 (E.D. Mich. May 19, 2009) .........................................................8

*Sparks v. Wal-Mart Stores, Inc.*,
    361 F.Supp.2d 664 (E.D. Mich. 2005)................................................................7, 12

*Sprint Communications Co., L.P. v. Theglobe, Inc.*,
    236 F.R.D. 524 (D.Kan. 2006)...............................................................................10, 20

*Stanford v. Parker*,
    266 F.3d 442 (6th Cir. 2001) ...................................................................................12

*United States v. Markwood*,
    48 F.3d 969 (6th Cir. 1995) .................................................................................7, 12

*Williamsville Central School District v. Cannon Partnership*,
    162 A.D.2d 965 (4th Dept. 1990) ............................................................................9

## RULES

Fed. R. Civ. P. 26(b)(1)...............................................................................................19

Fed. R. Civ. P. 26(b)(2)(C) .........................................................................................19

Fed. R. Civ. P. 26(b)(2)(C)(i) ....................................................................................19

Fed. R. Civ. P. 26(b)(2)(C)(ii) ...................................................................................19

Fed.R.Civ.P. 26(b)(2)(C)(iii) .................................................................................7, 19

Fed. R. Civ. P. 26(b)(3)...............................................................................................19

Fed. R. Civ. P. 26(c)(1)(A) .........................................................................................19

Fed. R. Civ. P. 30(b)(6)..............................................................................2, 5, 6, 11, 20

Fed. R. Civ. P. 34 .........................................................................................................7

Fed. R. Civ. P. 37(a)(3)(B)(iv).....................................................................................7

Fed. R. Civ. P. 37(a)(5)(A) .......................................................................................7, 8

Fed. R. Civ. P. 37(a)(5)(A)(iii) ....................................................................................8

Fed. R. Civ. P. 37(a)(5)(B) and (C) .............................................................................8

## ISSUES PRESENTED

1.      Should Nissan be compelled to produce documents in response to JENA's Document Request No. 48, which seeks test specifications and test results for cooling fan motors for *every* Nissan and Infiniti vehicle *other than the vehicles at issue in this lawsuit*, where (1) Nissan has already produced responsive documents to JENA relating to the vehicles at issue in this lawsuit, (2) the request remains objectionable despite JENA's attempt to limit it, and (3) Nissan, in an attempt to resolve this discovery issue, has produced locked rotor testing specifications and test results for a related line or platform of vehicles similar to the vehicles at issue in this lawsuit?

Nissan answers "no."

JENA answers "yes."

2.      Should Nissan be compelled to answer JENA's Interrogatory No. 7, which asks Nissan to identify every cooling fan motor in *every* Nissan and Infiniti vehicle *other than the vehicles at issue in this lawsuit*, where (1) JENA has this information as it relates to the cooling fan motors in the subject vehicles, (2) the interrogatory remains objectionable despite JENA's attempt to limit it, and (3) Nissan, in an attempt to resolve this discovery issue, has produced documentation that identifies the cooling fan motors utilized in a related line or platform of vehicles similar to the vehicles at issue in this lawsuit?

Nissan answers "no."

JENA answers "yes."

3.      Should Nissan be compelled to produce a 30(b)(6) corporate designee in response to deposition topics that are unreasonably broad, burdensome, not described with reasonable particularity and otherwise objectionable?

Nissan answers "no."

JENA answers "yes."

4.      Should Nissan be sanctioned for making good faith objections that are substantially justified in response to JENA's overly board, unduly burdensome and otherwise improper discovery requests?

Nissan answers "no."

JENA answers "yes."

## <u>CONTROLLING AUTHORITY</u>

Nissan relies on Fed. R. Civ. P. 26, Fed. R. Civ. P. 30(b)(6), Fed. R. Civ. P. 33, Fed. R.

Civ. P. 34, and Fed. R. Civ. P. 37, and the additional authorities cited in its Response.

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Two well-settled rules of discovery are under assault by Defendant Johnson Electric North America, Inc.'s ("JENA's") Third Motion to Compel and for Sanctions.  The first is that discovery must be reasonably tailored and not overly broad and unduly burdensome.  The second is that discovery fishing expeditions are not allowed.  JENA's Document Request No. 48 and Interrogatory No. 7, which seek test specifications and test results regarding *every* Nissan and Infiniti vehicle sold *other than the subject vehicles*, run afoul of both of these rules.  JENA's discovery requests are patently overbroad, unduly burdensome, and unlimited as to scope.  JENA has made no attempt to limit them to similar vehicles or in any other meaningful fashion.  Nissan's objections to the requests are proper and substantially justified.  Accordingly, JENA's Motion as to these requests should be denied.

To the extent JENA has legitimate discovery needs in connection with Document Request No. 48 and Interrogatory No. 4, they have been satisfied by Nissan's production of test specifications and test results for a related line or platform of trucks and SUVs that are similar to the trucks and SUVs at issue in this case.  JENA's Motion should be denied for this additional reason.

The deposition topics at issue in JENA's 30(b)(6) Deposition Notice are also overly broad, unduly burdensome and objectionable.  One asks Nissan to designate a corporate representative to testify regarding "the basis of each of Nissan's allegations in its Complaint" – there are one hundred and eighteen paragraphs in the Complaint – and another to testify regarding each and every document request and interrogatory directed to Nissan and non-party Visteon Corporation – JENA has propounded ninety-one document requests and seventeen interrogatories, many of which have dozens of subparts.  The other deposition topics at issue are

equally broad, burdensome and objectionable.   Accordingly, JENA's Motion as to its Rule 30(b)(6) Deposition Notice should be denied.

## STATEMENT OF FACTS

### A.    Background, The Recent Mediation, And Status Of Litigation.

As alleged in Nissan's Complaint (Docket # 1), this civil action arises out of JENA's design, manufacture and supply of defective automotive components in breach of its contractual and other obligations resulting in the recalls of certain model year 2004-2006 Nissan Titan, Nissan Armada, and Infiniti QX56 trucks and SUVs.  Nissan seeks to recover its costs related to the recalls from JENA.

On November 17, 2010, the parties mediated this matter with Mr. Eugene Driker acting as a third-party mediator/facilitator.  The mediation did not result in a settlement.  Within twenty-four hours after the mediation, JENA re-filed the instant motion, re-filed a second motion to compel and for sanctions (and took the unusual action of re-filing Nissan's response brief without advising Nissan's counsel in advance), and issued a slew of discovery related letters to Nissan demanding certain discovery and requesting dates to meet and confer on yet additional discovery issues.

This litigation is currently in the discovery phase.  A stipulated order modifying the scheduling order was entered on November 4, 2010 (Docket # 71), extending the discovery cut-off to May 27, 2011.  No depositions have been taken to date, although the parties are in the process of obtaining deposition dates from witnesses.  This matter is set for trial on January 3, 2012.

### B.    The Discovery Requests At Issue.

JENA raises a number of concerns spanning several discovery requests.  They are addressed *seriatim*.

2

### 1.    JENA's Document Request No. 48.

At issue in JENA's Document Request No. 48 are locked rotor test specifications and test results for cooling fan motors in all Nissan and Infiniti vehicles "other than the Subject Vehicles."  The Subject Vehicles are those vehicles at issue in this lawsuit, namely model year 2004 – 2006 Nissan Titan, Nissan Armada, and Infiniti QX56 vehicles.  Nissan has already produced the locked rotor test specifications and test results for the Subject Vehicles.  JENA now seeks the test specifications and results for *every other* Nissan and Infiniti vehicle, without regard to whether or not those vehicles are similar in any way to the Subject Vehicles or utilize a cooling fan motor that is similar in any way to the motor utilized in the Subject Vehicles.

In response to JENA's overbroad and burdensome document request, Nissan interposed the following objections:

> **RESPONSE:**  Nissan objects to this request because it is overly broad, unduly burdensome and harassing.  Nissan further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Johnson Electric has made no attempt to limit the scope of vehicles at issue in [this] request and instead has asked for a company-wide search, which is unlimited in scope and time.  In addition, the burden and expense of conducting a company-wide search for every test result about locked rotor testing across all vehicle lines, worldwide, at any time, would outweigh any benefit such information, if it exists, could provide.

*See* Ex. 5 to JENA's Motion.

Subsequently, JENA agreed to limit the requested locked rotor test specifications and results to those from model year 2002 to 2006, however, it refused to limit its request to similar vehicles and reiterated its demand as it relates to every Nissan and Infiniti vehicle.

Notwithstanding its objections and in an effort to avoid involving the court needlessly in this discovery issue, Nissan recently produced to JENA locked rotor test results and other information for a similar vehicle line or platform known as X61B.  The test results are from another Nissan supplier, CalsonicKansei, and address tests that were performed under the same

Nissan test specification at issue in this case. (*See* Declaration of Sean Cavanaugh, attached hereto as Ex. A.[1]) This information was previously produced to JENA over a month ago on October 22, 2010, although it was designated for use only in connection with the November 17 mediation. (*See* October 22, 2010, letter to JENA's counsel, attached as Ex. B.) It has now been produced to JENA in discovery in this matter pursuant to the stipulated protective order.

The Subject Vehicles constitute the X61A vehicle line or platform and are sold under the trade names noted above. (*See* Cavanaugh Declaration, Ex. A.) Nissan Titan is a truck and Nissan Armada and Infiniti QX56 are SUVs. *Id.* The X61B vehicle line or platform is comprised of Nissan Frontier, Xterra, and Pathfinder vehicles. *Id.* The Frontier is a truck and the Xterra and Pathfinder are SUVs. *Id.* Generally speaking, the X61B vehicles are similar but smaller versions of the trucks and SUVs that comprise the Subject Vehicles at issue in this case. *Id.* The X61A and X61B vehicles have similar HVAC systems. In fact, the eight cylinder engine utilized in X61B vehicles is the same eight cylinder engine utilized in the subject or X61A vehicles. *Id.* Images depicting the Subject Vehicle (X61A) and the similar X61B vehicles are attached at Ex. C.[2]

As set forth below, Nissan respectfully submits that its production of the locked rotor test results and other materials requested by JENA relating to the similar X61B vehicles – Nissan Frontier, Xterra, and Pathfinder – should resolve this issue.

      **2.**       **JENA's Interrogatory No. 7.**

---

[1] The test results report is dated July 2, 2010, but CalsonicKansei advised that the testing was conducted earlier and relates to X61B vehicles. The original test results are written in Japanese. CalsonicKansei translated the test results and produced them in the report dated July 2, 2010. *See* Cavanaugh Declaration.

[2] These images and additional information regarding these model year 2011 vehicles are available at www.NissanUSA.com and www.InfinitiUSA.com.

Interrogatory No. 7 asks Nissan to identify every fan motor in every Nissan or Infiniti vehicle other than the Subject Vehicles that is tested by Nissan or its suppliers using Nissan Design Specification Test 1.4.14 and any documents or communications discussing "problems" as that term is used in the test specification.  Nissan has already produced responsive documents regarding the Subject Vehicles and JENA now seeks information regarding *every* Nissan or Infiniti vehicle other than the Subject Vehicles.

In response to JENA's overbroad and burdensome interrogatory, Nissan interposed the following objections:

> **RESPONSE:**  Nissan objects to this request because it is overly broad, unduly burdensome and harassing.  Nissan further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Johnson Electric has made no attempt to limit the scope of vehicles at issue in [this] request and instead has asked for a company-wide search, which is unlimited in scope and time.  In addition, the burden and expense of conducting a company-wide search for every communication (oral or written) about Test 1.4.14 across all vehicle lines worldwide would outweigh any benefit such information, if it exists, could provide.

*See* Ex. 6 to JENA's Motion.

Subsequently, JENA agreed to limit the requested information for vehicles manufactured from 2002 to 2006, however, it refused to limit its request to similar vehicles and reiterated its demand as it relates to every Nissan and Infiniti vehicle.

Similar to Document Request No. 48, Nissan respectfully submits that its production of documents and information relating to the similar X61B vehicles noted above also resolves this issue.  Those materials include test results from Nissan's supplier that "identify" the fan motors utilized in the X61B vehicles and even include photos of the motors.

### 3.      JENA's Rule 30(b)(6) Deposition Notice.

JENA's Rule 30(b)(6) Deposition Notice contains twenty separate topics and thirty-two subparts.  One topic, No. 19, asks Nissan to identify a corporate representative to testify regarding the "basis of each of Nissan's allegations in its Complaint" while another, topic No. 20, asks Nissan to identify a witness to testify regarding "the topics covered by any Request for Documents and Other Things or Interrogatory previously or contemporaneously served upon Nissan and Visteon by Johnson."  (*See* Deposition Notice attached as Ex. 4 to JENA's Motion.) JENA has issued forty-eight document requests and seventeen interrogatories to Nissan, many of which have numerous subparts.  JENA has issued forty-three documents requests to Visteon, which also have numerous subparts.  Many of the remaining eighteen topics in JENA's Deposition Notice are equally broad and burdensome.

Concerned about the breadth and scope of the notice, Nissan's counsel wrote to JENA's counsel in an effort to narrow it in a reasonable fashion.  (*See* Letter attached as Ex. 7 to JENA's Motion.)  Ultimately this led to a series of lengthy telephonic meet-and-confers between counsel for the parties spread over three days.  Although the parties were able to agree on the scope of several topics in the Deposition Notice, others remained unreasonably broad, burdensome and otherwise objectionable.  Those topics are addressed in detail in Section III of the Argument, *infra*.

## ARGUMENT

### I.  DISCOVERY MUST BE REASONABLY TAILORED AND NOT OVERLY BROAD AND UNDULY BURDENSOME AND DISCOVERY FISHING EXPEDITIONS ARE NOT ALLOWED IN THIS COURT.

It is well settled that the District Court has broad discretion to limit discovery requests that are overly broad and unduly burdensome.  *Surles ex re. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 304 (6th Cir. 2007) (the Federal Rules of Civil Procedure instruct district courts to limit discovery where its "burden or expense ... outweighs its likely benefit, taking into account

the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(iii)).

Discovery fishing expeditions are not allowed in the Eastern District of Michigan. *Sparks v. Wal-Mart Stores, Inc.*, 361 F.Supp.2d 664, 672 (E.D. Mich. 2005) (discovery is so limited so as to avoid a "fishing expedition masquerading as discovery") (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979) ("This Court has made clear that 'an overly broad request for discovery which constitutes no more than a fishing expedition will not be allowed.'"); *see also United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995) (noting that the Federal Rules of Civil Procedure do not grant a party the right to unlimited discovery).

## II.   NISSAN'S OBJECTIONS TO DOCUMENT REQUEST NO. 48 AND INTERROGATORY NO. 7 ARE PROPER AND SUBSTANTIALLY JUSTIFIED, AND ITS PRODUCTION OF ADDITIONAL DISCOVERY MATERIALS REGARDING A SIMILAR VEHICLE PLATFORM SHOULD RESOLVE ANY LEGITIMATE DISCOVERY NEEDS RAISED BY JENA.

Rule 37(a)(3)(B)(iv) states that a party may bring a motion to compel if the opposing party "fails to permit inspection — as requested under Rule 34."   Fed. R. Civ. P. 37(a)(5)(A), which discusses reasonable expenses in connection with a motion to compel, only applies if the motion is granted.  However, (as JENA conspicuously leaves out of its motion), that rule further provides that:

> …But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A); *see also Higgs v. Doug Andrus Dist., LLC*, 2009 WL 1448268, at *3 (E.D. Mich. May 22, 2009) (Mag. Majzoub) (denying expense and fees motion under Rule 37(a)(5)(A) where questions remained about the communication attempts between the parties with respect to discovery); *Rogers v. City Of Detroit*, 2009 WL 1427381, at *1 (E.D. Mich. May 19, 2009) (Mag. Majzoub) (denying request for costs and fees under Rule 37(a)(5)(A)(iii) where defendants set forth the reason for failing to timely respond to discovery in response brief and at hearing and agreed to search for further responsive documents when they became aware of the nature of the documents sought). (Unpublished opinions are attached as Ex. D). Moreover, Rule 37(a)(5)(B) and (C) further provide that if the motion to compel is denied in whole or in part, then the movant may have to pay the other party's reasonable expenses for responding to the motion.

Here, Nissan's objections to Document Request No. 48 and Interrogatory No. 7 are proper and substantially justified. Both of these discovery requests are overly broad, unduly burdensome, and seek documents and information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Both seek documents and information regarding vehicles *not* at issue in this case. Indeed, they seek documents and information regarding *every* Nissan and Infiniti vehicle *other than the Subject Vehicles*, without regard to whether or not those vehicles are similar in any way to the Subject Vehicles or utilize a cooling fan motor that is similar in any way to the motor utilized in the Subject Vehicles. The burden and expense of conducting a company-wide search for test results relating to every Nissan and Infiniti vehicle outweighs any benefit such information, if it exists, could provide. In addition, Nissan has already produced the test specifications and test results for the cooling fan motors in the Subject Vehicles.

Case law from other states is instructive on this point.  For example, in Florida where discovery requests seek information regarding automobile makes and models different than the one involved in the subject lawsuit, it is the plaintiff's burden to establish a substantial similarity before discovery of other makes and models is permissible.  *See Nissan Motors Corp. v. Espinosa*, 716 So.2d 279, 280 (Fla. App. 1998).  JENA makes no attempt to show such "substantial similarly."  Nor can it possibly make this showing in light of the fact that it seeks discovery regarding *every* Nissan and Infiniti vehicle other that the Subject Vehicles.

Similarly, in Texas discovery in a products liability case is limited to the product at issue in the case.  Overbroad requests encompassing products beyond those at issue in a case violate the rule that discovery requests must be reasonably tailored to include only matters relevant to the case.  *See In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding).  The same is true in New York.  In order for the requested discovery to be relevant, it must be demonstrated by the requesting party that the information sought concerns the same or similar accident or injury as alleged by the plaintiff and of the same model allegedly used by the plaintiff or those models sufficiently similar to warrant inclusion.  *Latusso v. Black & Decker*, 198 A.D.2d 844 (4th Dept. 1993); *Williamsville Central School District v. Cannon Partnership*, 162 A.D.2d 965 (4th Dept. 1990) *Mestman v. Ariens Company*, 135 A.D.2d 516 (2nd Dept. 1997); *Cramer v. Kuhns*, 192 A.D.2d 893, 894-895 (3rd Dept. 1993); *Giordano v. A&M Tool & Dye Company*, 104 A.D.2d 1027 (2nd Dept. 1984).  Other states are in accord, *see Ex parte Cooper Tire & Rubber Co.*, 987 So.2d 1090, 1103-04 (Ala. 2007) (the trial court exceeded its discretion in holding that the plaintiffs are entitled to discovery of information regarding failures of all tires manufactured by Cooper, even those unrelated to the alleged tread separation defect at issue in the case.)

In an effort to reach a reasonable compromise and avoid needless motion practice, Nissan recently produced documents in discovery that were previously produced on October 22, 2010, for use in connection with the November 17, 2010, mediation.[3]  As discussed  above, Nissan produced to JENA locked rotor test results from supplier CalsonicKansei for a similar vehicle line or platform known as X61B, which includes the Nissan Frontier truck and the Nissan Xterra and Pathfinder SUVs.  The test results address tests that were formed under the same Nissan test specification at issue in this case.  Nissan also produced a chart illustrating the fan fusing for the X61B vehicles and numerous circuit diagrams for the X61B fan motor.

Nissan respectfully submits that this production is reasonably tailored to any legitimate discovery need raised by JENA.  It supplies the test specifications and test results for cooling fan motors in similar vehicles as requested in Document Request No. 48 and also identifies the fan motors (including photos of the fan motors) as requested in Interrogatory No. 7.  Accordingly, JENA's Motion in this regard should be denied.

## III.    NISSAN'S OBJECTIONS TO CERTAIN TOPICS IN JENA'S DEPOSITION NOTICE ARE PROPER AND SUBSTANTIALLY JUSTIFIED.

In order "to allow the Rule [30(b)(6)] to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in the dispute."  *Sprint Communications Co., L.P. v. Theglobe, Inc.,* 236 F.R.D. 524, 528 (D.Kan. 2006) (emphasis added).  Open ended notices do not meet the requirement that topics be stated with sufficiently particularity.  For example, a notice stating "the area of inquiry will include but not [be] limited to [listed topics] is

---

[3] Had JENA revisited this discovery issue with Nissan before rushing off less than twenty-four hours after the November 17 mediation to file and re-file its discovery motions and letters, Nissan would have been in a position to offer this compromise before formal motion papers were filed.

overly broad because the listed areas of inquiry are not exclusive. *See Reed v. Nellcour Puritan Benett*, 193 F.R.D. 689, 692 (D.Kan. 2000). A notice that is framed too broadly may evoke a proper objection and/or motion for a protective order. *See Id.* at 692. "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task . . . Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.* at 692. Indeed, "a person designated under [Rule 30(b)(6)] must be prepared to testify on the matters included in the deposition notice . . . but cannot be expected to prepare to testify on all matters relevant to the litigation at issue.*"* *Newfrey LLC v. Burnex Corp.*, 2009 WL 3698548, at *2 (E.D. Mich. Nov. 5, 2009) (internal citation omitted).

JENA's Deposition Notice is extremely overbroad and burdensome. It includes twenty topics and thirty-two subparts and seeks a corporate representative to testify regarding, among other things, each allegation in Nissan's one hundred and eighteen paragraph complaint and each document request and interrogatory propounded to Nissan and Visteon, which total ninety-one document requests and seventeen interrogatories, many of which include numerous subparts. It is an impossible task for Nissan to prepare someone to testify on all matters relevant to the litigation at issue.

For these reasons and the reasons stated below, Nissan's objections to JENA's Deposition Notice are proper and substantially justified, and JENA's Motion as to its Rule 30(b)(6) Notice should be denied.

### A.    Model Years Outside The Scope Of The Subject Vehicles And Other Issues, Topics Nos. 1, 2, 5, 8, 10, 11, and 12.

Although the subject matters addressed in topics 1, 2, 5, 8, 10, 11, and 12 of JENA's Deposition Notice are different and vary widely, there is a common issue in dispute with respect to each. Namely, whether or not Nissan should be compelled to produce a witness regarding

11

model year vehicles *not* at issue in this case.  The Subject Vehicles include only model years 2004 – 2006, yet JENA seeks discovery on wide ranging topics for model years 2007 to the present (2011).  Except as noted in subsection B, *infra*, Nissan has agreed to produce a witness on these topics but limited to the relevant model years, 2004 – 2006, for the Subject Vehicles.

Without limiting the topics in this fashion it becomes unreasonably burdensome, if not impossible, for Nissan to designate a corporate representative to testify concerning the overly broad subject matters identified by JENA.  For example, topic No. 10 seeks a corporate designee to testify regarding "all design and manufacturing changes and/or modifications made to the 90 Watt and 140 Watt Fan Motors and Cooling Fan Assemblies, including but not limited to Johnson's change in the manufacturing location of the 90 Watt Fan Motors, and notice, approval and validation of all such changes and modifications."  (*See* JENA's Motion, p. 10.)  What post-model year 2006 design changes or modifications is JENA contemplating?  What post-model year 2006 manufacturing changes is JENA contemplating?  Why are these changes relevant to this case?  JENA's answer, as stated in its Motion reveals nothing:  "Design and manufacturing changes and/or modifications made post-model year 2006 through the present are relevant to determining the cause of any alleged problems with the subject motors."  (*See* JENA Motion, p. 10.)  JENA provides no basis why this information is relevant.  Simply stating it is relevant does not make it so.  Clearly JENA is on a fishing expedition with respect to post-model year 2006 issues.  It is well established is this Court that discovery fishing expeditions are not permitted. *See Sparks v. Wal-Mart Stores, Inc.*, 361 F.Supp.2d 664, 672 (E.D. Mich. 2005); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979); *see also United States v. Markwood*, 48 F.3d 969, 982 (6th Cir. 1995).

The same can be said for each of the topics in dispute.  JENA fails to offer any reason why discovery into post-model year 2006 vehicles should be permitted other than conclusory, self-serving statements such as "discovery is necessary regarding later vehicle model years to assess causation and responsibility for the alleged failures."  (*See, e.g.,*  topics Nos. 11 and 12, JENA's Motion, p. 11.)

Notwithstanding its objections to these topics, Nissan is willing to compromise and produce a corporate witness to the extent JENA identifies specific subject matters of relevance in post-model year 2006 vehicles.  This was requested of JENA during the June 2010, telephonic meet-and-confers, but JENA was (and presumably continues to be) unwilling to do that except with respect to two issues.  Namely, the maxifuse issue, which concerns a fuse incorporated into the Subject Vehicles in certain instances as part of the recall campaign repair procedures and post-model year 2006 vehicles and "the reversed fan rotation problem" identified in topic No. 11(c).  As Nissan indicated previously, it is willing to produce a corporate representative to testify regarding these issues in post-model year 2006 vehicles.

**B.      Additional Objections To Topics Nos. 5, 8, 10, 11 and 12.**

Although JENA's Motion indicates that the only dispute with respect to topics Nos. 1, 2, 5, 8, 10, 11 and 12 relates to the post-model year 2006 issue, Nissan objected to topics Nos. 5, 8, 10, 11 and 12 on additional grounds, each of which is proper, significantly justified, and provides an independent basis to deny JENA's Motion.

**1.      Additional Objections To Topic No. 5.**

Topic No. 5 seeks a corporate designee to testify regarding "the fire hazard protection devices used for electrical fans in Nissan and Infiniti vehicles from 2000 to the present."  This topic is objectionable for two primary reasons.  First, the phrase "fire hazard protective devices" is vague and ambiguous.  JENA has provided no indication what this means, other than a vague

reference to fuses.  As Nissan stated in its April 29, 2010, letter, "Nissan will produce a witness with knowledge to testify regarding fuse/connector protection devices and Nissan's expectations regarding designs from suppliers related to cooling fan motors and assemblies and fires on the 2004-2006 Nissan Titan, Nissan Armada and Infiniti QX56 vehicles."  (*See* Letter, Ex. 7 to JENA's Motion, p. 3.)  Second, JENA has made no attempt to limit this topic to the vehicles at issue in this lawsuit.

### 2.    Additional Objections To Topic No. 8.

Topic No. 8 generally seeks testimony regarding testing of 90 Watt and 140 Watt cooling fan motors.  Nissan agreed to produce a witness with knowledge to discuss 8(a) and 8(b), which are essentially the test specifications at issue in this case, for the Subject Vehicles during the relevant model years, 2004 – 2006.  JENA withdrew topic 8(c).  That leaves topic 8(d), which seeks a witness with knowledge of all "APQP and similar documents."  This sub-topic is objectionable because it is vague and ambiguous as to what this phrase means, in particular the reference to "similar documents."  It is also unduly burdensome because it incorporates JENA's Document Request No. 5, which alone contains over thirty-two subparts.  JENA has failed to explain why this information is discoverable other than to state:  "Discovery is necessary regarding later vehicle model years to assess whether alleged defects in testing had any effect on fire risks."  (*See* JENA Motion, pp. 9-10.)

### 3.    Additional Objections To Topic No. 10.

As noted above, topic No. 10 seeks a corporate designee to testify regarding unspecified design and manufacturing changes and/or modifications made to the 90 Watt and 140 Watt fan motors and cooling assemblies, including "but not limited to" the unauthorized design changes made by JENA when it moved fan production from Italy to China.  (*See* Complaint, Ex. 1 to JENA's Motion, ¶ 44.)  Although Nissan is now aware of the unauthorized design changes made

14

by JENA to the fan motors in the Subject Vehicles, and will produce a witness to testify about those, JENA fails to identify any other changes or modifications to the fan motors making it unduly burdensome, if not impossible, for Nissan to make a meaningful designation.  In addition, JENA includes the larger fan motor assemblies (supplied by Visteon) in this topic and fails to identify changes or modifications to the assembly or how such changes/modifications, if any, are relevant to this case.

####       4.       Additional Objections To Topic No. 11.

Topic No. 11 seeks a corporate designee to testify regarding "defects" in 90 Watt and 140 Watt fan motors and the larger cooling fan assemblies including "reports of failure or other problems and analysis of the reports of failure or other problems."  This topic is objectionable because it is vague and ambiguous.  The terms "defects" and "failures" and "other problems" provide no guidance to Nissan as to what issues JENA is after.  This topic also seeks discovery that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  A fan motor assembly can have a number of "problems" that results in a failure.  For example, a stick could be lodged in one of the fan blades on the cooling motor assembly as a result of driving down a road.  This has nothing to do with the issues in this case, yet JENA is asking this Court to compel Nissan to produce a corporate designee to testify about it and other unspecified "defects," "failures," and "problems."

####       5.       Additional Objections To Topic No. 12.

Topic No. 12 asks Nissan to designate a corporate designee to testify regarding "the cause of failures and thermal event associated with or arising out of the 90 Watt and 140 Watt fan motors and fan assemblies in the Subject Vehicles" and "all other Nissan Titan, Nissan Armada and Infiniti QX56 vehicles and the root cause investigations and analyses of same."  Similar to topic No. 11, this topic is objectionable because the term "failures" is undefined and it

seeks discovery that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  As stated in the April 29, 2010, letter of counsel, Nissan will produce a witness with knowledge to testify regarding the thermal events at issue in this lawsuit as they relate to the Subject Vehicles.

### C.    Topic No. 3.

This deposition topic mirrors the language of Document Request No. 48.  Consistent with its response above and notwithstanding its stated objections, Nissan is willing to produce a witness who will testify regarding the test specifications and results for the locked rotor testing in X61B vehicles, including the test results referenced above from CalsonicKansei.  This should address any legitimate discovery issue JENA has on this issue.

### D.    Topic No. 4(d) and (e).

Topic 4(d) seeks testimony regarding "all aspects of the decision making process that led to building a fuse into the engine room harness starting in model year 2008."  Nissan properly objected to this subtopic because it is vague and ambiguous and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  In response to subtopics 4(a), (b), and (c), Nissan agreed to produce a witness to testify regarding the 40A fusible link, the gauge of the wire, and the maxifuse as utilized in the subject vehicles. It is not clear what JENA means by the phrase "fuse in the engine room harness" beyond the fuses covered in subtopics (a) and (c).

Topic 4(e) asks Nissan to designate a corporate representative to testify regarding "the use, purpose and any and all failures of the ECM and/or the IPDM in the Nissan Titan, Nissan Armada and Infiniti QX56 vehicles.  Nissan properly objected to this subtopic as overly broad and vague and as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  These objections were substantially justified at the time they were made on April 29,

2010, because JENA provided no basis as to why these modules were at issue in this case. They were particularly appropriate given JENA's use of the phrase "all failures" which implicates any and all problems irrespective of how or if the failures impact the subject cooling fan motors.

In its Motion JENA now claims the ECM and/or IPDM are "highly relevant" because Nissan's electrical system is at issue and replacement of these modules is part of Nissan's warranty service procedure. Nissan's objections remain substantially justified. Simply by declaring that Nissan's electrical system "is at issue" should not entitle JENA to conduct a fishing expedition with respect to these modules, especially where JENA makes no attempt to explain how they relate to the subject cooling fan motors. In addition, JENA is simply wrong when it asserts that replacement of these modules is part of Nissan's warranty service procedure. As excerpts of the Nissan and Infiniti Recall Campaign Bulletins issued to dealerships (who perform the recall service work) make clear, there is no reference to replacing ECMs or IPDMs. In fact, there is no reference to "ECM" at all and the only reference to "IPDM" is to instructions on how to remove a plastic *cover* called a "IPDM E/R upper cover" in order to install a maxifuse. (*See* excerpts of Recall Campaign Bulletins, p. 38 and 41, respectively, Ex. E.) As noted above, Nissan has agreed to produce a witness to testify regarding the maxifuse. It is misleading for JENA to equate removing a plastic cover with replacing an electronic module.

### E. Topic No. 14.

The dispute with respect to topic No. 14 is whether JENA is entitled to discovery regarding issues no longer relevant to this case. At the time the complaint was filed, and JENA issued its Deposition Notice, Nissan was pursuing the recovery of warranty claims *and* recall claims. As such, JENA's Deposition Notice contains topic No. 14 directed to "warranty returns" and a separate topic, No. 15, directed to the recall claims. (*See* Deposition Notice attached as Ex. 4 to JENA's Motion, pp. 5-7.) As Nissan advised JENA in its June 24, 2010, "Nissan is no

17

longer pursuing recovery of warranty claims in this matter." (*See* Letter attached as Ex. 10 to JENA's Motion.) Nissan continued:

> In response to your letter of June 22, 2010, we believe that Nissan's objections were proper in the first instance. However, in light of the fact that Nissan is no longer pursuing recovery of warranty claims in this matter, it is clear that discovery regarding "warranty returns" is neither relevant [n]or reasonably calculated to lead to the discovery of admissible evidence. JENA's position, as stated in your letter, that the "information sought is relevant to whether the warranty return figures varied or were out of the ordinary" does not make sense. What is the connection between variation of warranty returns and the subject recalls? (*Id.*)

The answer to this question recast by JENA is its Motion – that "JENA is entitled to compare the warranty returns for the recalled vehicles to those over the lifetime of the project" – continues to make little sense. (*See* JENA's Motion, p. 13.) Warranty returns are no longer part of this lawsuit and compelling Nissan to produce a witness to testify regarding *every* warranty return for every vehicle in detail, including investigations of each warranty return, repair procedures and corrective actions considered and taken, etc., is wholly unreasonable and burdensome. Indeed, the breadth and scope of topic 14 is astonishing when one considers that cooling fan motors, and the larger cooling fan assemblies, can fail for a variety of reasons, none of which have anything to do with the issues in this case. JENA's Motion as to this topic should be denied.

## F.     Topic No. 17.

Contrary to JENA's assertions at page 14 of its Brief, its Topic No. 17 does not "seek specific testimony from Nissan regarding its and its parent company's document, storage, searching, and preservation policies." Instead, the topic reads:

> Nissan and its parent company, Nissan Motor Co., Ltd.'s document storage, searching, and preservation policies, including but not limited to their implementation and Nissan's document production in this case.

Ex. 4 to JENA's Motion at page 8 of 9. This is an inappropriate 30(b)(6) topic, and all three parts of Fed. R. Civ. P. 26(b)(2)(C) are implicated – as well as Fed. R. Civ. P. 26(c)(1)(A) and requires the striking of this topic.

First, this request is overbroad and unduly burdensome in that it in no way purports to be limited to materials relevant to this case. Rather, it seeks a deponent (or deponents) on data practices relating to thousands of record types in *all* of Nissan's facilities in multiple countries. Under Fed. R. Civ. P. 26(b)(2)(C)(iii), the burden of such discovery outweighs any benefit – because information that is patently irrelevant is not information that is "relevant to a claim or defense" or is "reasonably calculated to lead to the discovery of admissible evidence" under Fed. R. Civ. P. 26(b)(1).

Second, the only way this topic is "targeted" is that it targets privileged information and work product: "include[es] but is not limited to Nissan's document production in this case" and admittedly "central decisions" made in response to discovery. JENA's Motion at 14. This is outside the scope of discovery. *See, e.g., Gibson v. Ford Motor Co.*, 510 F.Supp.2d 1116, 1123 (N.D. Ga. 2007) (post-litigation instructions privileged); Fed. R. Civ. P. 26(b)(3) (party work product). JENA has already been provided with the documents and a summary of their origins (during the drafting of the joint statement of unresolved issues at pages 50-53 in connection with JENA's first motion to compel), militating for a restriction on discovery under Fed. R. Civ. P. 26(b)(2)(C)(ii).

Finally, JENA had has the ability explore non-privileged aspects related to specific records with witnesses who used those records. This would be a far less burdensome and expensive method of obtaining any information that is legitimately discoverable. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

G.      **Topic No. 19.**

The final deposition topic in dispute in No. 19, which asks Nissan to identify a corporate designee to testify regarding "the basis for each of Nissan's allegations in its Complaint."  As it stands, this would require a Nissan witness to testify to over one hundred and eighteen subparts, the number of allegations in Nissan's Complaint.  This type of topic is patently objectionable because it is overly broad, vague, oppressive and seeks information that is duplicative of other topics contained in JENA's Deposition Notice.  It is also an abuse of Rule 30(b)(6) which obligates JENA to describe the matters for examination "with reasonable particularity." *See Sprint Communications Co., L.P. v. Theglobe, Inc.,* 236 F.R.D. 524, 528 (D.Kan. 2006); *Reed v. Nellcour Puritan Benett*, 193 F.R.D. 689, 692 (D.Kan. 2000); *Newfrey LLC v. Burnex Corp.*, 2009 WL 3698548, at *2 (E.D. Mich. 2009).

## CONCLUSION

For the reasons stated above, JENA's motion is properly denied.


Dated:  December 6, 2010                    DYKEMA GOSSETT PLLC


                                            By:*/s/Thomas S. Bishoff*_____
                                                Thomas S. Bishoff (P53753)
                                                Lisa A. Brown (P67208)
                                                Brittany M. Schultz (P63272)
                                                400 Renaissance Center
                                                Detroit, Michigan 48243
                                                (313) 568-5341

                                                *Attorneys for Plaintiff Nissan North America, Inc.*


20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2010, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:  Gregory J. Fleesler, Matthew J. Lund, and Thomas J. Manganello.


*/s/Thomas S. Bishoff*_____
Thomas S. Bishoff
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243-1668
(313) 568-5341
tbishoff@dykema.com
P53753